IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **FELISHA STARKEY,** )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>**MISSOURI DEPARTMENT OF** )<br>**ELEMENTARY AND SECONDARY** )<br>**EDUCATION, DIVISION OF** )<br>**VOCATIONAL REHABILITATION,** )<br>**AND COMMISSIONER OF THE** )<br>**DEPARTMENT OF ELEMENTARY** )<br>**AND SECONDARY EDUCATION** )<br>)<br>Defendant. ) | Cause No. _____ |

## COMPLAINT

COMES NOW Plaintiff, Felisha Starkey, by and through her attorneys, Kiara N. Drake and Susan K. Eckles, Missouri Protection and Advocacy Services, and for her Complaint against Defendants, Missouri Department of Elementary and Secondary Education, Division of Vocational Rehabilitation, and Commissioner of the Missouri Department of Elementary and Secondary Education, states:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 29 U.S.C. § 722(c)(5)(J)(i) and 28 U.S.C. § 1331 (1980).

2. Venue is appropriate in this District, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to this Complaint occurred in this District.

1

## PARTIES

3.     Plaintiff resides in Pacific, Franklin County, Missouri. Plaintiff was a client of Defendant Vocational Rehabilitation (VR). Plaintiff appeals the closure of her case by VR, the denial of training services by VR, and the Hearing Officer's and Defendant Commissioner's decisions to uphold VR's actions.

4.     VR is the state agency receiving federal funds to carry out the provisions set out in Title I of the Rehabilitation Act of 1973, 29 U.S.C. § § 722 and 723.

5.     The Commissioner is the highest official in the Department of Elementary and Secondary Education, and VR falls under her purview.

## FACTUAL ALLEGATIONS

6.     Plaintiff has diagnoses of trigeminal neuralgia, peripheral neuropathy, and degenerative disc disease. As a result, Plaintiff has difficulty typing and holding a telephone to her ear, as these activities and others that require her to lift her arms at a ninety-degree or narrower angle pinch the nerves in her arms. Plaintiff also has difficulty lifting heavy items and stooping or bending for extended periods, due to her back pain.

7.     Plaintiff obtained a bachelor's degree in psychology and a Master's of Business Administration/Management Information Systems and worked as an internal information technology auditor until she had to discontinue that work in 2007, due to the worsening of her back and hand pain.

8.     Plaintiff's only sources of income are Social Security disability and food stamps. Plaintiff sought VR's services as a vehicle for alleviating her dependence on state and federal aid.

9.     Plaintiff most recently applied for VR's services on August 29, 2011. There is no dispute as to Plaintiff's initial eligibility for services. (Tr. at 37).

10. Based on her own independent research, Plaintiff informed her VR counselor, Daniel Samit, that she was interested in obtaining a master's degree in social work or speech-language pathology. Plaintiff ultimately identified speech-language pathology (SLP) as her employment goal, with a focus on children's therapy, due to her observations of the speech-language therapy her nieces and grandmother received.

11.  Plaintiff did some research and learned that she needed to complete a number of prerequisite courses before she could begin a master's program. She then compared education programs and determined that online courses at Utah State University were most cost-effective and allowed Plaintiff to attend over the summer.

12. By December 2015, Plaintiff will have completed eight of the twelve prerequisite SLP courses and plans to complete the remaining courses by the summer semester of 2016. Plaintiff hopes to enroll in an SLP master's program in the fall of 2016; however, Plaintiff will not be able to fund her education without services from VR.

13. Claire Beck, District Supervisor of VR's St. Louis South office, decided VR could assist Plaintiff in finding employment with the marketable skills she already had and denied Plaintiff's request for funding for training on August 19, 2013. (Letter from Claire Beck, dated August 19, 2013). Ms. Beck became Plaintiff's VR counselor soon thereafter.

14. In a letter dated February 7, 2014, Plaintiff's then-physician, Dr. Anthony Guarino, M.D., informed VR that Plaintiff was capable of attending work and school with accommodations, including voice-activated software, digital textbooks, and a headset that would not put pressure on her head. (Letter from Dr. Anthony Guarino).

15. However, Plaintiff was not provided an individualized plan for employment (IPE) because VR did not agree that Plaintiff's employment goal should require additional training.

Plaintiff exercised her right to the support of a Client Assistance Program (CAP) advocate in negotiations with VR. Plaintiff and VR ultimately agreed that Plaintiff would undergo Discovery and Exploration (D&E) with one of VR's contractors, MERS Goodwill (MERS), to identify a mutually agreeable employment goal, whether SLP or some other field. Plaintiff signed the D&E Agreement on April 29, 2014.

16. Leslie Quarles of MERS referred Plaintiff to two SLPs in the area, so Plaintiff could complete the required job shadowing for D&E. Ms. Beck indicated in her July 29, 2014 case note that Ms. Quarles was unable to find SLPs that would allow both Ms. Quarles and Plaintiff to observe, for client confidentiality reasons, and that it was "up to [Plaintiff]" to follow up.

17. Ms. Quarles referred Plaintiff to SLPs Pamela Hass on July 23, 2014 and Jan Butler on July 28, 2014. Plaintiff emailed Ms. Hass on July 23, 2014, and Ms. Hass informed Plaintiff that she would not be able to accommodate Plaintiff until school started in the fall. (Hr'g Ex. H at 2). Plaintiff was not able to shadow Ms. Hass until October 1, 2014.

18. Because Ms. Hass indicated that there was little activity in her profession during the summer, Plaintiff waited and emailed Ms. Butler on September 4, 2014, and completed her job shadowing on September 23, 2014.

19. On September 4, 2014, in her Supported Employment Exploration Planning Report, Ms. Quarles did not recommend Plaintiff for job development. (Planning Report at 13). Ms. Quarles included the information Plaintiff marked on the Personal History Form in her report, highlighting that "lifting 15+ lbs, climbing, grasping, reaching, pulling, pushing, twisting, turning, stooping, prolonged heat/cold exposure, prolonged walking/sitting/standing" were problematic for Plaintiff and that Plaintiff can only handle "'limited' bending." (Planning Report at 12). Plaintiff also indicated on the form that she would need to recline with an ice pack during

4

lunch or breaks. (*Id.*). Ms. Quarles ultimately determined that Plaintiff's requested accommodations were unreasonable, due to the "primary responsibilities and expectations of the positions," and that Plaintiff lacked the stamina to perform any full-time work. (Planning Report at 13).

20. Ms. Quarles did not document the primary responsibilities and expectations Plaintiff would be unable to meet, or elaborate on the alleged unreasonableness of Plaintiff's requested accommodations.

21. On September 9, 2014, during a meeting with Plaintiff, Plaintiff's CAP advocates, Ms. Beck, Ms. Quarles, and others, VR and MERS refused to acknowledge Plaintiff's follow-up with Ms. Butler because the job shadowing was scheduled to take place after that meeting.

22. At the end of the September 9, 2014 meeting, VR advised Plaintiff that it "could not recommend employment services at [that] time" and gave Plaintiff information for requesting a due process hearing. (Case Note, dated September 9, 2014). By the time Plaintiff completed her job shadowing with Ms. Hass on October 1, 2014, Plaintiff believed VR was determined to close her case.

23. In a letter dated October 7, 2014, VR informed Plaintiff that her records would be placed in the "inactive file" on October 17, 2014. (Closure Letter). The stated reason for closure was "due to the severity of your disabling condition, it appears that you are unable to benefit from our services at this time." (*Id.*).

24. Plaintiff requested a due process hearing on January 13, 2015. Plaintiff and VR submitted their Joint Scheduling Request on March 26, 2015. The hearing took place on May 29, 2015.

25. At the hearing, Plaintiff presented evidence of her completion of job shadowing with Ms. Hass and Ms. Butler as an indication of Plaintiff's commitment to becoming an SLP and her

5

understanding of and physical capability to perform the activities expected of SLPs, In addition, Plaintiff presented documentation of her volunteer work at Ms. Butler's summer camp for autistic elementary school children and her volunteer teaching with the Immigrant & Refugee Women's Program, teaching English to a woman from Taiwan.

26.     Plaintiff also presented an affidavit from her treating physician, Dr. Michael King, M.D., wherein he stated that Plaintiff can work with accommodations, such as dictation software, a Bluetooth earpiece, and the freedom to sit and stand intermittently. (Hr'g Ex. A at item 12). These are reasonable accommodations.

27.     VR had the burden of proof at the hearing to justify case closure by clear and convincing evidence. However, VR did not present any evidence proving the unreasonableness of Plaintiff's requested accommodations.

28.     Plaintiff testified that because of the nature of her disability, she cannot spend the majority of the workday sitting at a desk or typing. (Tr. at 11). She testified that she is capable of working with accommodations, like dictation software, an earpiece, an opportunity to lie down or recline during breaks, and an extra break, depending on the length of her lunch break. (*Id.* at 12, 17). Plaintiff further testified that a field like SLP would allow her more flexibility to vary her day-to-day work activities and hours. (*Id.* at 13).

29.     Ms. Beck testified that she is not a medical professional, and, while she acknowledged that Plaintiff's doctor reported that Plaintiff is capable of working, her opinion as to the severity of Plaintiff's disability was unchanged. (*Id.* at 52). Ms. Beck did not offer an objective standard for her decision but stated that she based her determination on what Plaintiff told her and what she saw (*Id.*).

30. Later, Ms. Quarles testified, "I actually said in my report that I recommended her explore part-time employment with the skills that she has now." When asked whether she conveyed that to VR, Ms. Quarles testified, "Yes, it was – this report was reviewed with everyone at that meeting in September." (*Id.* at 96).

31. Ms. Beck testified that during the meeting, VR told Plaintiff it would not support her SLP goal, but VR would possibly support counseling and other goals and part-time employment. (*Id.* at 98).

32. When asked if Plaintiff was too disabled to work at the time of the meeting in September, Ms. Beck testified that Plaintiff would not have been too disabled if she had "considered other part-time goals that would fit with her limitations." (*Id.*).

33. Ms. Beck also testified, "[A]t the end of that time, [Plaintiff] indicated that she was going to ask for a fair hearing. So a month went by and we didn't hear anything back so sent the ten day closure letter." (Tr. at 97).

34. Despite its own determination that Plaintiff was capable of part-time employment and the fact that there is no time limitation for a request for hearing, VR determined that Plaintiff was too disabled to benefit from services and closed her case. (Tr. at 98).

35. Ms. Beck testified that the sole, official reason for case closure was VR's determination that Plaintiff was too disabled to benefit from services. (Tr. at 27).

36. Ms. Beck further testified that she wrote in her case notes that Plaintiff's level of cooperation was "problematic"; however, she did not give Plaintiff notice before case closure or in the ten-day closure letter. (Tr. at 54, 55).

37. In her decision, dated June 17, 2015, the impartial hearing officer upheld VR's closure of Plaintiff's case. (Hr'g Decision at 7). The hearing officer relied on facts beyond the scope of the

7

stated reason for closure, citing occasions when Plaintiff missed or rescheduled appointments during the span of her case. The hearing officer determined that VR provided Plaintiff with "numerous opportunities to take advantage of the services provided to her," giving her "more than a reasonable number of opportunities" to "benefit in terms of achieving an employment outcome." (*Id.* at 6). The hearing officer also reiterated throughout the decision that Plaintiff offered limited participation and that she was reluctant or slow in her follow-through. (*Id.* at 5, 6).

38. The hearing officer did not articulate the required legal standard for determining when a client is too disabled to benefit from services, nor did she apply the facts of Plaintiff's case to that standard. Instead, the hearing decision focuses on participation, which was not the grounds for closure stated in the October 7, 2014 closure letter, nor is there any evidence in the case file or the hearing transcript that Plaintiff was put on notice that her alleged lack of participation put her at risk for case closure.

39. Plaintiff sent a request for administrative review to the Commissioner, in a letter dated July 2, 2015, and attached the hearing decision, the closure letter, Dr. Guarino's letter, and the deposition of Dr. King, as exhibits. VR submitted a response to Plaintiff's request in a letter dated July 7, 2015.

40. Without giving the parties an opportunity to present additional evidence and information, the Commissioner denied Plaintiff's appeal in a letter dated July 29, 2015. The Commissioner failed to cite any statutory, regulatory, policy, or even factual grounds for her decision. Citing Black's Law Dictionary's definition of "clear and convincing evidence," the Commissioner found that the hearing decision was "based upon competent and relevant evidence." (Administrative Review Decision).

8

41.	Plaintiff's counsel received a copy of the hearing transcript from VR on August 17, 2015.

### COUNT I: VR'S VIOLATIONS OF LAW AND RIGHTS BY FAILURE TO TIMELY DEVELOP PLAINTIFF'S IPE

42.	Plaintiff incorporates and restates each of the above paragraphs.

43.	29 U.S.C. § 722(b)(3)(F) states, "The individualized plan for employment shall be developed as soon as possible, but not later than a deadline of 90 days after the date of the determination of eligibility . . . unless the designated State unit and the eligible individual agree to an extension of that deadline to a specific date."

44.	While Plaintiff's case was opened on August 29, 2011, no IPE was developed at any time during the life of her case. Plaintiff agreed to undergo D&E in order to identify a mutually agreed upon employment goal because she was determined to get off of Social Security disability. However, Plaintiff and VR never agreed on a specific deadline for the development of her IPE.

45.	VR failed to adhere to its obligations under 29 U.S.C. § 722(b)(3)(F), in violation of Plaintiff's rights.

46.	VR denied Plaintiff the opportunity to complete training and seek the meaningful, competitive employment of her choosing.

### COUNT II: VR'S VIOLATIONS OF LAW AND RIGHTS BY DENIAL OF PLAINTIFF'S RIGHT TO INFORMED CHOICE

47.	Plaintiff incorporates and restates each of the above paragraphs.

48.	29 U.S.C. § 722(b)(3)(B) states, "An individualized plan for employment shall be developed and implemented in a manner that affords eligible individuals the opportunity to exercise informed choice in selecting an employment outcome, the specific vocational

rehabilitation services provided under the plan, the entity that will provide vocational services, and the methods used to procure services."

49. When Plaintiff identified her employment goal and the necessary training, she informed VR, but VR refused to fund Plaintiff's SLP coursework. VR believed Plaintiff could work utilizing the skills she already possessed, despite the fact that Plaintiff would have to identify a different goal to use those skills. Thereby, VR denied Plaintiff's request for services in contravention of her right to informed choice.

50. VR denied Plaintiff the opportunity to complete training and seek the meaningful, competitive employment of her choosing.

### COUNT III: VR'S VIOLATIONS OF LAW AND RIGHTS BY FAILURE TO MEET ITS BURDEN OF PROOF

51. Plaintiff incorporates and restates each of the above paragraphs.

52. 34 CFR 361.42(e) states, "Prior to any determination that an individual with a disability is incapable of benefiting from vocational rehabilitation services in terms of an employment outcome because of the severity of that individual's disability, the designated State unit must conduct an exploration of the individual's abilities, capabilities, and capacity to perform in realistic work situations to determine whether or not there is clear and convincing evidence to support such a determination."

53. 29 U.S.C. § 722(a)(5) states, if an applicant is "determined not to be eligible for the services, or if an eligible individual receiving services under an individualized plan for employment is determined to be no longer eligible for services . . . the individual . . . shall be informed in writing . . . of the ineligibility determination, including . . . the reasons for the determination, including the clear and convincing evidence that forms the basis for the determination of ineligibility."

54. While Plaintiff was engaged in some trial work experience through D&E, there is no indication from the case file or Ms. Beck's hearing testimony that VR had clear and convincing evidence that Plaintiff's disability was severe enough to justify its determination that Plaintiff could not benefit from services. In fact, the evidence shows that Plaintiff could benefit from services.

55. Plaintiff was not an applicant determined ineligible for services, nor did she have an IPE. However, given the intent and plain meaning of the statute and VR's failure to develop Plaintiff's IPE within the 90-day deadline, VR's failure to provide Plaintiff with written notice of clear and convincing evidence that she was too disabled to benefit from services in her closure letter is a violation of Plaintiff's due process rights.

56. VR denied Plaintiff the opportunity to complete training and seek the meaningful, competitive employment of her choosing.

### COUNT IV: VIOLATIONS OF LAW AND RIGHTS BY THE HEARING OFFICER'S DECISION TO UPHOLD CLOSURE OF PLAINTIFF'S CASE

57. Plaintiff incorporates and restates each of the above paragraphs.

58. Under 5 C.S.R. § 20-500.170(2), "[i]f an applicant or eligible individual is dissatisfied with any determination made by VR regarding the provision of services, the applicant or eligible individual may request an informal review, a due process hearing, or mediation."

59. The hearing officer's decision must include "findings of fact and conclusions of law," and it must be based on "the provisions of the approved state plan, the federal act and/or applicable regulations, and appropriate state law and/or regulations." 5 C.F.R. § 20-500.190(8).

60. The hearing officer's decision is not supported by the law and the evidence, as it does not articulate that VR had clear and convincing evidence that Plaintiff is too disabled to benefit from services, per 29 U.S.C. § 722(a)(5) and 34 CFR 361.42(e).

11

61. Further, the hearing officer's decision is based on evidence beyond the stated reason for case closure.

62. The hearing officer's decision is clearly erroneous and in violation of Plaintiff's due process rights.

### COUNT V: COMMISIONER'S VIOLATIONS OF LAW AND RIGHTS BY THE COMMISSIONER'S DENIAL OF PLAINTIFF'S DUE PROCESS RIGHTS

63. Plaintiff incorporates and restates each of the above paragraphs.

64. The Commissioner shall overturn or modify the hearing officer's decision if the Commissioner determines, "based on clear and convincing evidence, that the decision of the impartial hearing officer is clearly erroneous on the basis of being contrary to the approved state plan, the federal act and/or applicable regulations, or the appropriate state law and/or regulations." 5 C.S.R. § 20-500.190(11).

65. Upon an appellee's request for administrative review, the Commissioner of the Department of Elementary and Secondary Education "shall provide an opportunity for submission of additional evidence and information relevant to a final decision." 5 C.S.R. § 20-500.190(10), 29 U.S.C. § 722(c)(5)(F)(i).

66. The Commissioner "shall provide a written final findings of fact and conclusions of law" to the appellee. 5 C.S.R. § 20-500.190(12).

67. The Commissioner failed to provide Plaintiff with an opportunity to submit additional, relevant evidence and information before rendering her decision.

68. The Commissioner's decision does not include any findings of fact for her conclusion that the hearing decision was based upon "competent and relevant evidence."

69. The hearing decision does not establish that VR had clear and convincing evidence that Plaintiff is too disabled to benefit from services.

70. The hearing decision is clearly erroneous and contrary to state and federal law. However, the Commissioner failed to overturn or modify the decision, in violation of Plaintiff's due process rights.

**COUNT VI: VR'S VIOLATIONS OF LAW AND RIGHTS UNDER THE AMERICANS WITH DISABILITIES ACT (ADA)**

71. Plaintiff incorporates and restates each of the above paragraphs.

72. VR is an employment agency because it regularly undertakes to find employment opportunities for its clients. Therefore, VR is a "covered entity," as defined in 42 U.S.C. § 12111(2), and is subject to the requirements of Title I of the ADA.

73. An employer violates the ADA when it discriminates against a "qualified individual" on the basis of his or her disability by failing to make "reasonable accommodations" for that individual's "known physical or mental limitations." § 12112(b)(5)(A).

74. An employer also discriminates against a "qualified individual" by denying employment opportunities to avoid making reasonable accommodations. § 12112(b)(5)(B).

75. An employer must prove that a requested accommodation will cause undue hardship to refute the presumption of reasonableness. § 12112(b)(5)(A).

76. Plaintiff is a "qualified individual" under the ADA, as defined in 42 U.S.C.A. § 12111(8), because, per her doctor, reasonable accommodations would allow her to work. Therefore, she has a right to reasonable accommodations.

77. Under the ADA, individual employers bear the burden of proving they cannot provide requested accommodations or that requested accommodations are unreasonable. Here, however, VR supplanted its own judgment for that of potential employers, determining that no SLP employer would institute Plaintiff's accommodations.

78.     VR denied Plaintiff the opportunity to complete training and seek the meaningful, competitive employment of her choosing.

### COUNT VII: DEFENDANTS' VIOLATIONS OF LAW AND RIGHTS UNDER § 504 OF THE REHABILITATION ACT

79.     Plaintiff incorporates and restates each of the above paragraphs.

80.     Plaintiff is an "individual with a disability" as defined in 29 U.S.C. § 705(20).

81.     Plaintiff is "otherwise qualified" as defined by *Southeastern Community College v. Davis,* 442 U.S. 397, 406 (1979) and *Simon v. St. Louis County,* 656 F.2d 316, 321 (8th Cir.), *cert. denied,* 455 U.S. 976 (1981), as she is able to meet all of the necessary and legitimate requirements of school and SLP work, with accommodations.

82.     Defendants receive federal financial assistance.

83.     Solely by reason of Plaintiff's disability, Defendants excluded Plaintiff from participation in, denied Plaintiff the benefits of, and subjected Plaintiff to discrimination in their programs and activities, in violation of 29 U.S.C. § 794(a).

84.     Defendants denied Plaintiff the opportunity to complete her training and seek the meaningful, competitive employment of her choosing.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court reverse the decisions of the Hearing Officer and the Commissioner; enter judgment in favor of Plaintiff; and award:

   a.   Injunctive relief, ordering VR to develop an IPE with an SLP employment goal;

   b.   Injunctive relief, ordering VR to retroactively fund Plaintiff's SLP training;

   c.   Reasonable attorney's fees; and

14

       d.       Such other and further relief as the Court deems appropriate.

/s/ Kiara  N. Drake_____
Kiara N. Drake #67129MO
Staff Attorney I
Susan K. Eckles #38641MO
Managing Attorney
Missouri Protection and Advocacy Services
2000 Innerbelt Business Center Drive
Overland, Missouri 63114
314-785-1702, ext. 234
314-785-1707 (fax)
kiara.drake@mo-pa.org
susan.eckles@mo-pa.org
**Attorneys for Plaintiff**